Note:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3069

ROBERT W. KITTS, JR.,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

_____

DECIDED:  July 17, 2006

_____

Before MICHEL, Chief Judge, RADER and SCHALL, Circuit Judges.

RADER, Circuit Judge.

The Merit Systems Protection Board (Board) affirmed the Department of Transportation's (Agency) removal of Mr. Robert W. Kitts, Jr.  See Robert W. Kitts, Jr. v. Dep't of Transp., SF-3443-03-0261-I-6 (M.S.P.B. Mar. 25, 2005) (Initial Decision); Robert W. Kitts, Jr. v. Dep't of Transp., SF-3443-03-0261-I-6 (M.S.P.B. Sept. 20, 2005) (Final Decision).  Mr. Kitts claims the Agency's decision is in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301–4333.  Finding no reversible error, this court affirms.

I

Mr. Kitts worked as a Civil Aviation Security Specialist with the Federal Air Marshal Service, Los Angeles Division.  When he applied for employment with the

Agency on February 11, 2002, Mr. Kitts hid critical information. Mr. Kitts did not disclose that he was still on "administrative leave" from his position as a Deputy U.S. Marshal for the United States Marshal Service (USMS). In October 2001, the USMS relieved Mr. Kitts of his duties as a Deputy U.S. Marshall and placed him on "administrative leave" because three active misconduct investigations were still pending against him before the USMS's Disciplinary Review Board. These investigations involved allegations of fighting, making a false statement, and concealing evidence (handguns and marijuana). When he applied to the Agency, Mr. Kitts falsely marked "No" on his Questionnaire for National Security Positions (QNSP) when asked if he had ever been fired, or left a job under unfavorable circumstances or following allegations of misconduct. Additionally, though also asked to provide self-employment information in his QNSP, Mr. Kitts did not disclose that he was self-employed. His self-employment involved hiring felons for delivery work.

In addition, while employed with the Agency, Mr. Kitts also failed to disclose that he was engaged in conduct that directly contravened his obligation not to associate with convicted felons outside his Agency employment. On August 12, 2002, the Office of Inspector General (OIG) notified the Agency of a complaint against Mr. Kitts. Investigation into this complaint by the OIG revealed that Mr. Kitts had hired eight felons to work for him, between January 23 and July 11, 2002. As a result, the Agency also investigated the OIG complaint between September 17, 2003 – October 3, 2003. This investigation confirmed that Mr. Kitts had been hiring felons to work for him while employed with the Agency. This information was placed in a Report of Investigation,

which the Deciding Official (DO) received in early December 2002. Around January 10, 2003, the DO received approval to remove Mr. Kitts.

Mr. Kitts argues that he was removed because he was on military leave from January 6 – 10, 2003, and because he received mobilization orders on January 24th. Mr. Kitts points out that he sent an email to his supervisor on January 22, 2003, in which he advised that his military unit may mobilize soon. However, in this email, Mr. Kitts also wanted to know why he had been taken off flight status the previous week. His supervisor responded to this email stating that he understood that "allot[sic] of personnel" were "mobilizing" and that "[t]he ASAIC needs to speak to you, in person, but since you have been on military leave, this had not been possible." His supervisor asked if "there [was] any date you can see in the future when you can resolve this with the ATSAIC(sic)?" The record contains no further response from Mr. Kitts. The Agency then mailed its termination letter to Mr. Kitts on January 24, 2003. Later that day, Mr. Kitts sent an email notifying his supervisor and others that he had received mobilization orders. Based on proximity in time between his termination and military activity, Mr. Kitts argues that the Agency's decision to terminate him was in violation of USERRA.

II

This court will not set aside a decision of the Board, unless it finds the decision to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Walls v. Merit Sys. Prot. Bd., 29 F.3d 1578, 1581 (Fed. Cir. 1994). The USERRA provides:

> A person who is a member of . . . performs, has performed . . . or has an obligation to perform service in a uniformed service shall not be denied

initial employment, reemployment, retention in employment . . . by an employer on the basis of that membership . . . performance of service . . . or obligation.

* * * *

(c) An employer shall be considered to have engaged in actions prohibited . . . under subsection (a), if the person's membership . . . service . . . or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . service . . . or obligation for service.

38 U.S.C. § 4311 (2005). An employee making a USERRA claim of discrimination bears the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action. Sheehan v. Dep't of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001). Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses. Id. at 1014. When the employee has met this burden, the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action. Id. Thus, in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the agency action, upon which the agency must prove, by a preponderance of evidence, that the action would have been taken despite the protected status. Id.

The Board found that Mr. Kitts did not make an initial showing that his military status or obligations were at least a motivating or substantial factor in the Agency's decision to terminate him. As set out above, the Board found that the Agency's decision to terminate Mr. Kitts was made because Mr. Kitts lied on his employment application, and hid critical information while employed with the Agency. Furthermore, though Mr. Kitts advised the Agency that he may be mobilized on January 22, 2003, and then that he had received mobilization orders on January 24, 2003, this was after the decision had been made to remove him, and his January 24th email was not received until after his removal letter had been mailed. Thus, this court discerns that substantial evidence supports the Board's conclusion that the decision to remove Mr. Kitts was made without his military status or obligations having any impact upon the decision to remove him.